```
IN THE UNITED STATES DISTRICT COURT FOR THE
         EASTERN DISTRICT OF OKLAHOMA

MARY FAY CORBITT,              )
                               )
           Plaintiff,          )
                               )
v.                             )    Case No. CIV-12-167-RAW-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
           Defendant.          )
```

## REPORT AND RECOMMENDATION

Plaintiff Mary Fay Corbitt (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 10, 1970 and was 40 years old at the time of the ALJ's decision. Claimant obtained her GED afte attending special education classes. Claimant has worked in the past as a custodian, food stocker, and housekeeper. Claimant alleges an inability to work beginning April 15, 2008 due to limitations resulting from borderline split personality disorder,

depression, inability to learn things quickly, nervousness, problems with focusing, problems dealing with supervisors, back problems, and hand problems.

**Procedural History**

On July 6, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On August 18, 2010, an administrative hearing was held before ALJ Michael Kirkpatrick. On October 25, 2010, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on February 28, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find additional conditions as severe impairments at step two; (2) failing to properly assess Claimant's mental RFC; and (3) failing to give adequate weight to the opinion of Dr. Rogow.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of anxiety disorder, NOS, borderline personality disorder, major depressive disorder, recurrent, mild, hyperlipidemia, asthma, and minimal spondylosis of the lumbar spine. (Tr. 20). He also found Claimant retained the RFC to perform light work except that she could not perform complex skilled tasks. (Tr. 24). After consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant work as a housekeeping cleaner, informal waitress, and deli cutter slicer which are classified at the light exertional level. (Tr. 33).

Claimant contends that the ALJ erred in not finding her conditions of PTSD, schizophrenia, schizoaffective disorder, multiple personality disorder, psychotic disorder/psychosis/borderline psychosis, and mild mental retardation as severe impairments.

Since 2003, Claimant has been diagnosed with a myriad of

5

mental disorders. In January of 2007, Claimant was diagnosed with PTSD with borderline psychosis. At that time, she was experiencing increasing hallucinations but her depression was "okay." Later that same month, Claimant was noted as being very anxious and tense but with no evidence of active psychosis, danger or movement disorder. (Tr. 265-66).

In May of 2007, Claimant was diagnosed with chronic PTSD with borderline psychosis, borderline traits, asthma by history, and social and emotional issues. Claimant's GAF was estimated at 40. (Tr. 267-68).

In September of 2007, Claimant experienced vague suicidal thoughts, but with no clear plans or increasing psychotic symptoms. She stated she was increasingly stressed, was not sleeping, and was agitated. Her medication was not working. She described her condition as "going bonkers." Claimant was again diagnosed with PTSD with borderline psychosis. (Tr. 270).

In March of 2008, Claimant was diagnosed with PTSD with psychosis. She reported having increased mood swings. Her medication appeared to be helping with "the voices." She was still depressed and she was upset she was not doing better. Claimant had not had any therapy sessions since November. No evidence of active danger, psychosis, or movement disorder but increasing depression

was noted. No evidence of mania was found. (Tr. 272).

In November of 2008, Claimant was diagnosed with anxiety disorder, NOS, PTSD with psychosis, and borderline personality disorder. Claimant's GAF was 48. She was found to have disturbance of thought evidenced by hearing voices that tell her what to do, suicidal ideation, and past trauma. (Tr. 274). Claimant's excessive anxiety was evidenced by panic attacks, anxiety with nervousness, and difficulty concentrating. The staff psychiatrist noted that Claimant "continues to experience symptoms that impair her functioning." (Tr. 276). In May of 2009, Claimant's treatment at the Ozark Guidance Center was discontinued due to a loss of contact. At that time, the Center assessed her progress as "poor" and her prognosis as "guarded." (Tr. 279).

In August of 2009, Claimant began treatment at the Bill Willis Community Mental Health and Substance Abuse Center. Claimant was shown to be suffering from PTSD and mild mental retardation. (Tr. 581).

In August of 2010, Claimant was diagnosed with major depression, NOS and psychotic disorder, NOS. Claimant reported feeling much better since beginning medication with better moods and sleep. (Tr. 594).

In August of 2009, a psychiatric assessment was done on

Claimant by Dr. Marie Raine. Claimant reported thinking about suicide all of the time but that she "just haven't snapped enough to do it." She stated she cut her wrists twice but stopped when it hurt. She also reported depression and anxiety. Claimant reported auditory hallucinations. She stated she cannot function around people and can't deal with the stress of co-workers. Claimant stated she wakes from bad dreams and cannot return to sleep. (Tr. 597).

In September of 2009, Claimant was attended by Dr. Mark Rogow. Dr. Rogow diagnosed Claimant with schizophrenia, schizoaffective disorder, chronic. He found Claimant did not have suicidal ideations and did not continue to hear voices. (Tr. 330).

In September of 2009, Claimant underwent a Mental Status Examination by Dr. Diane Brandmiller. Dr. Brandmiller diagnosed Claimant with major depressive disorder, recurrent, mild with a GAF of 56-65. (Tr. 285). Dr. Brandmiller noted Claimant's report of depressed mood, low energy, poor concentration, low self esteem, nightmares, periodic irritability, and auditory hallucinations. Her long term and short term memories were intact. Her abstract thinking was "mildly impaired." (Tr. 286).

On January 20, 2010, Dr. Rogow completed a Mental Residual Functional Capacity Questionnaire on Claimant. Dr. Rogow stated he

8

had been treating Claimant monthly for four months. He evaluated Claimant as suffering from schizoaffective disorder, anxiety disorder with a GAF of 35 with the highest GAF over the past year of 40. Dr. Rogow stated Claimant still heard voices telling her to kill herself and had paranoid ideations, flight of ideas with poor insight, fair judgment and concrete abstraction. Claimant was found to have a flat affect. Dr. Rogow estimated Claimant's prognosis as fair. (Tr. 323).

Dr. Rogow set forth the signs and symptoms for Claimant's condition. These symptoms included anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; thoughts of suicide; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; impairment of impulse control; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience which are a source of marked distress – sexual abuse by her father; persistent disturbances of mood or affect; change in personality in cycles; paranoid thinking or inappropriate suspiciousness; seclusiveness; emotional withdrawal or isolation; bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndrome; intense and unstable interpersonal

relationships and impulsive and damaging behavior; perceptual or thinking disturbances; hallucinations or delusion; emotional lability; flight of ideas; deeply ingrained, maladaptive patterns of behavior; loosening of associations; vigilance and scanning (mild); pathologically inappropriate suspiciousness or hostility; sleep disturbance; oddities of thought, perception, speech or behavior. (Tr. 324).

In the assessing Claimant's mental abilities and aptitudes needed to do unskilled work, Dr. Rogow found Claimant had no useful ability to function in the areas of remembering work-like procedures; carrying out very short and simple instructions; making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in a routine work setting. Dr. Rogow also found Claimant was unable to meet competitive standards in the areas of interacting appropriately with the general public; maintaining socially appropriate behavior; traveling in unfamiliar places; and using public transportation. (Tr. 325).

A claimant bears the burden at step two to present evidence that she has a medically severe impairment or combination of

impairments. Bowen v. Yuckert, 482 U.S. 137, 146 & n. 5 (1987). While the showing required is described as "de minimis," the claimant "must show more than the mere presence of a condition or ailment." Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (quotation omitted).

The ALJ's step two task is to determine, based on the record, whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). An impairment is "not severe if it does not significantly limit [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1521(a). The problem with the multitude of varied mental and emotional conditions with which Claimant has been diagnosed over time lies in the inability to separate the limiting effect of one such condition which the ALJ did not find to be a severe impairment from another condition which he did find to be severe. Without doubt, Claimant has been diagnosed with PTSD, schizophrenia, schizoaffective disorder, multiple personality disorder, psychosis of varying degrees of severity, and mild mental retardation (which appears to have largely been diagnosed from Claimant's subjective description) in the past as Claimant suggests. This Court cannot, however, conclude that these conditions imposed a greater degree of limitation upon Claimant's ability to engage in basic work activity

11

than the conditions which the ALJ found to represent severe impairments. Thus, this Court finds no error in the ALJ's step two findings.

## Mental RFC Assessment

The only limitation the ALJ placed upon Claimant's RFC related to mental functioning was that she not perform complex, skilled tasks. (Tr. 24). The ALJ essentially rejected all findings related to Claimant's mental conditions, choosing to only adopt and assess the opinions which supported a finding of non-disability. For example, the ALJ cited to the state agency physician's mental status examination, characterizing it as "very thorough" which found very little limitation upon Claimant's mental functioning. (Tr. 25). While Dr. Brandmiller concluded Claimant suffered from major depressive disorder with a GAF of 55-65, the ALJ completely ignored the vast treatment record which consistently found Claimant suffered from other significantly different conditions with considerably reduced GAF scores, not exceeding 40. These other treatment records must be discussed on remand and the ALJ will be required to explain his preference for accepting the agency physician's report over the treating physician's records.

Additionally, the ALJ expends considerable ink in referencing, but not expressing an opinion, regarding Claimant's tobacco,

marijuana, and alleged "med seeking." Whatever the reason for the ALJ's reference to these activities, nothing in the record indicates as the ALJ obliquely suggests that Claimant could have afforded more treatment if she had not engaged in this behavior. This is mere speculation upon which the ALJ attempts to bolster his faulty opinion.

## Treating Physician's Opinion

The ALJ afforded Dr. Rogow's opinion "little weight" because it is "not fully supported by and consistent with the medical evidence of record as a whole." (Tr. 30). The ALJ cites to the fact that Claimant was no longer hearing voices, Claimant had not had any psychiatric hospitalizations, and that a counselor found Claimant did not have memory problems and assessed Claimant with a GAF of 55 to support his rejection.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the

13

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

While the ALJ cites to Watkins, he does not appear to have performed the analysis required by Watkins. Again, the ALJ finds the agency physician's opinions which supports non-disability to be worthy of weight which Dr. Rogow's opinion is not without sufficient explanation. On remand, the ALJ shall reassess Dr. Rogow's functional assessment in light of the totality of the record and the requirements of Watkins.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will

preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE